Armand G. Erpf v. Commissioner.
Armand G. Erpf v. Commissioner
Docket No. 36549.
United States Tax Court
1953 Tax Ct. Memo LEXIS 211; 12 T.C.M. (CCH) 672; T.C.M. (RIA) 53209; June 12, 1953
*211 Held, certain stock became worthless in the year claimed by the petitioner. Henry Mannix, Esq., for the petitioner. Robert J. McDonough, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The respondent has determined an income tax deficiency of $3,549.58 against the petitioner for the calendar year 1948. The entire amount of the deficiency results from the respondent's determination that dividends in the amount of $17,570 received by the petitioner in June 1948 from the Railway and Utilities Investing Corporation, hereinafter referred to as RUIC, were taxable to the extent of 78.5976 per cent thereof instead of 52.7741 per cent thereof as reported by the petitioner. The sole issue presented is whether the respondent erred in determining that RUIC's 2,000 shares of common stock of *212 the Chicago, Rock Island and Pacific Railway Company, hereinafter referred to as Rock Island, did not become worthless during RUIC's fiscal year beginning July 1, 1947, and ending June 30, 1948. The parties are agreed that if the Rock Island common stock became wothless during that period the effect of the loss on RUIC's earnings available for distribution of taxable dividends results in no deficiency against the petitioner herein, but if such stock did not become worthless during that period the respondent's determination is correct. All of the facts involved herein are embraced in a lengthy and detailed stipulation, including numerous exhibits made a part thereof. The stipulated facts are found accordingly and included herein by reference as our findings of fact. The only testimony adduced is that of an expert witness expressing an opinion as to when the Rock Island stock became worthless. On his individual 1948 tax return, filed with the collector of internal revenue for the second district of New York, the petitioner reported taxable dividends in the amount of $9,272.41 representing 52.7741 per cent of a total of $17,570 dividends received on June 9, 1948, on his various shares *213 of stock of RUIC and pursuant to the latter's advice that 47.2259 per cent of such dividends was nontaxable as representing a return of capital. The stipulation sets forth the various shares of RUIC stock owned by the petitioner and his adjusted cost basis thereof. RUIC, a Delaware corporation, filed its tax return on the basis of a fiscal year beginning July 1, 1947, and ending June 30, 1948. On that return and also for the purpose of determining earnings available for distribution of taxable dividends for that year, RUIC claimed a long-term capital loss on the basis that its 2,000 shares of Rock Island common stock, acquired during the years 1928 to 1931 at a total cost of $173,570, became worthless during its fiscal year 1948. The respondent determined that RUIC's shares of Rock Island stock did not become worthless during that year and thereby increased RUIC's earnings available for dividend distribution and as a result determined that the petitioner was taxable on 78.5976 per cent of the RUIC dividends received by him on June 9, 1948. Immediately prior to June 7, 1933, Rock Island was a corporation organized and existing under the laws of the States of Illinois and Iowa and *214 was engaged in the business of a railroad operating as a common carrier of passengers and freight in both interstate and intrastate commerce. At that time Rock Island had numerous wholly-owned subsidiary railroad and terminal companies, it operated certain lines under leases and it owned stock and obligations of certain terminal companies used in its system which consisted of about 8,000 miles of lines located in fourteen states in the middle west and southwest sections of the United States. On June 7, 1933, the Rock Island filed a petition in the United States District Court for the Northern District of Illinois, Eastern Division, for reorganization under section 77 of the Bankruptcy Act, stating that it was unable to meet its debts as they matured. On August 28 and October 24, 1933, Rock Island's wholly-owned subsidiaries filed similar petitions in the same Court for reorganization in connection with Rock Island. The District Court approved the petitions as properly filed, directed the continued operation of the railroad under the Court's supervision and appointed trustees of all the properties of Rock Island and its subsidiaries. Copies of the petitions and the Court's orders *215 were filed with the Interstate Commerce Commission, hereinafter referred to as the I.C.C. On June 7, 1933, Rock Island's capital stock (all issues of $100 par value) consisted of $29,422,189 of seven per cent preferred A, $25,127,300 of six per cent preferred B, and $74,359.722.50 common, amounting to a total of $128,909,211.50 outstanding in the hands of the public and $517,477.50 common was held by Rock Island as treasury stock. On June 7, 1933, Rock Island's funded unmatured debt (consisting of equipment obligations, mortgage bonds, collateral trust bonds and unsecured convertible gold bonds) totaled $281,995,000 outstanding in the hands of the public and in addition thereto Rock Island owned $58,530,000 of its mortgage bonds which were pledged as security on loans. On the same date Rock Island was obligated on $4,125,000 bank loans and $13,718,700 Reconstruction Finance Corporation loans or a total of $17,843,700 collaterally secured loans. In its above mentioned petition for reorganization under section 77 of the Bankruptcy Act, Rock Island set out specific obligations, including semi-annual interest and an installment of principal, all totaling $2,259,710.85 due in June and *216 July 1933 and, also, certain secured loans and mortgage bonds all totaling $144,303,700 maturing in March and April 1934. Rock Island's balance sheet as of June 7, 1933, briefly stated in the margin, [1] disclosed a "Corporate Surplus" of $9,761,153.33 after giving effect to a reduction of such surplus account by a $4,593,306.29 deficit in "Income Account - current year." *217 For the month of June 1933 the activity of Rock Island common stock on the New York Stock Exchange, as shown by the Bank & Quotation Record, was 114,800 shares traded at an average high of eight and a low of three and seven-eighths. Rock Island continued its corporate existence and continued its operations as a common carrier under the jurisdiction and control of the District Court after the filing of the petition for reorganization on June 7, 1933, and throughout subsequent years of protracted litigation until January 1, 1948, when all of its properties vested in a reorganized company free and clear of any claims of Rock Island's stockholders. Under the facts herein there is no doubt that the Rock Island common stock had a market value on June 7, 1933, and that it was worthless on January 1, 1948. The question herein presented is whether such stock actually became worthless upon the happening of an identifiable event at some time during those years of protracted litigation and more particularly at some time prior to RUIC's fiscal year July 1, 1947, to June 30, 1948, as determined and now contended by the respondent rather than during that fiscal year as contended by the petitioner. *218 The prolonged litigation during a period of some fourteen and one-half years involved numerous interested parties, including Rock Island and various proposed plans of reorganization which were bitterly contested in hearings before the I.C.C. and proceedings before the above mentioned District Court, the United States Court of Appeals for the Seventh Circuit and the Supreme Court of the United States. The conflicts involved, inter alia, the valuation of the properties of the Rock Island system and the estimated earning power thereof, particularly in view of actual improvement in earning power during the lengthy period of litigation and, also, the proper capitalization of the reorganized company and the equity therein, if any, for the existing Rock Island capital stock. It would serve no useful purpose to review in detail the various plans and modified plans of reorganization which were in dispute, the numerous hearings and rehearings before the I.C.C. and the several proceedings before the Courts. Brief mention of some of the steps will suffice. Rock Island's own plan of reorganization filed with the I.C.C. in 1936 proposed a new capitalization which afforded a substantial equity *219 for the existing capital stock. In October 1940 the I.C.C., after consideration of the plans and briefs filed by the various interested parties, approved a plan of reorganization which it had formulated and in which it found that on the basis of its proposed reduced new capitalization there was no equity for the existing Rock Island preferred and common stock. That finding along with other phases of the plan was subject to review and modification of the Courts, hence the continued litigation. In June 1943 the District Court declined to approve the I.C.C. plan and referred it back to I.C.C. for further action. A modified plan of I.C.C. was approved by the District Court in May 1945 and that action was affirmed by the Circuit Court in May 1946 and certiorari was denied in November 1946. While those appeals were pending the I.C.C. certified to the District Court that the plan had been accepted by nine classes of creditors and rejected by two classes of creditors and that Court held hearings on whether the plan should be confirmed. In June 1946 the District Court, in a Memorandumopinion, declined to confirm the plan (an order of confirmation being necessary prior to consummation) and referred *220 the plan back to the I.C.C. for reconsideration because, inter alia, the modified plan had originated in 1940 and since then, under the Court's trustees, several millions of Rock Island's debts had been paid in full and it was in a strong cash position due to increased earnings and, further, Congress was considering new legislation affecting railroad reorganizations. In that opinion the District Court said in part that "in holding out hope to the junior creditors and stockholders, this Court, above all, would not have that hope illusory" and, further, that under the existing conditions "it would be vain for the junior creditors to expect to be made whole." In February 1947 the Circuit Court reversed the District Court's order declining to confirm the I.C.C. plan of reorganization and in May 1947 the District Court issued an order of confirmation in compliance with a writ of mandamus of the Circuit Court. In October 1947 the Supreme Court denied petitions for writ of certiorari for review of the Circuit Court decision and in November 1947 denied petitions for rehearing. While the petitions for writ of certiorari were pending and on October 9, 1947, the I.C.C. addressed a letter to the *221 Chief Justice of the United States Supreme Court, stating that if the plan was remanded the I.C.C. was prepared to give full hearings and reconsideration in the light of the materially changed condition of the debtor. The District Court entered an order of consummation of the I.C.C. plan of reorganization and final decree on December 30, 1947, and on January 1, 1948, all properties of Rock Island vested in the reorganized company, a Delaware corporation, free and clear of any claims, interests or liens of creditors and holders of existing capital stock of Rock Island. Shares of the Rock Island common stock were actively traded on the New York Stock Exchange throughout the years 1933 until June 18, 1943, when trading was suspended on that exchange. For the month of June 1943 (as disclosed by Bank & Quotation Record) the number of such shares traded amounted to 7,200 and the high was one and one-quarter and the low one. Throughout the period from July 1943 to December 1947 Rock Island common stock was traded Over-the-Counter with varying numbers of offerings, bids and bidders and varying high and low quotations. The quotations for the month of July 1947 were one and one-half high and *222 one and one-eighth low and for December 1947 they were five cents high and three cents low. The respondent takes the position that the petitioner has failed to overcome the prima facie correctness of his determination that the Rock Island common stock became worthless sometime prior to July 1, 1947. The respondent argues that the I.C.C. plan of reorganization of 1940 proposing a reduced new capitalization and no equity for the existing Rock Island stock rendered the latter worthless from thence forward, but if not, then the stock became worthless in 1943 when suspended from trading on the New York Stock Exchange and, further, that the final conclusion of the ligitation in the fall of 1947 merely confirmed the prior worthlessness. The petitioner contends that throughout the protracted litigation the Rock Island stock had some actual value as evidenced by the market therefor, and had a definite potential value based on a reasonable expectation that the existing stock would be assigned a fair equity in the reorganized company under any plan of reorganization finally confirmed and ordered consummated by the Courts. The petitioner further contends that no identifiable event took place *223 at any time prior to the Supreme Court's denial of certiorari in October 1947, which established with any degree of finality that the stock had become worthless. On the record before us we agree with the petitioner. Throughout the period from June 7, 1933, to January 1, 1948, the Rock Island was a going concern operating under the jurisdiction of the District Court and so long as that operation continued there was a reasonable hope and expectation of realizing the potential value which existed for the Rock Island common stock. That hope and expectation did not erminate until the litigation finally terminated. Certainly the 1940 I.C.C. plan filed with the District Court was not an identifiable event of worthlessness of the Rock Island stock, instead it was the crux of the bitter fight carried on in the Courts. In connection with loss deductions claimed by reason of alleged worthlessness of stock, it has been held that a taxpayer is not required to be an incorrigible optimist. , but on the other hand, neither may a taxpayer be incorrigibly pessimistic. In (pp. 1278, *224 1279) after citing numerous circuit court decisions, there is set forth a very complete review of the principles applicable in determining worthlessness of stock for tax purposes. Where a corporation continues to be a going concern, not only the market value at a given time but also the potential value of stock must be destroyed to establish worthlessness. Applying those principles to the facts in the instant case, we conclude that RUIC's 2,000 shares of common stock of Rock Island had such a potential value that they did not become worthless at any time between June 7, 1933, and July 1, 1947, the beginning of RUIC's fiscal year 1948. Such stock did become worthless during RUIC's fiscal year 1948. Cf. and . The respondent erred in his determination on the issue involved herein. Decision will be entered for the petitioner. Footnotes
1. Rock Island balance sheet as of June 7, 1933. ↩
ASSETS
Investments: Road and equip.
$379,804,198.57
In affiliated corps.
112,959,249.44
Other investments
5,712,221.84
Current Assets: Incl. cash, receivables, mate-
rial and supplies, etc.
11,750,492.72
Deferred Assets:
410,765.47
Unadjusted Debits:
1,680,845.19
Total Assets
$512,317,773.23
LIABILITIES
Stock: Held by public
$128,909,211.50
Government Grants:
389,763.94
Long-Term Debt: Funded unmatured held by
public
281,995,000.00
Debt to affiliate corps.
4,415,406.40
Current Liabilities: Incl. loans and bills payable,
matured and unmatured in-
terest accrued, etc.
30,626,687.21
Deferred Liabilities:
1,348,478.57
Unadjusted Credits:
54,872,072.28
Corporate Surplus:
9,761,153.33
Total Liabilities
$512,317,773.23